L8K5smiC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JANE SMITH, et al.,

               Plaintiffs,                New York, N.Y.

          v.                              21 Civ. 1715 (RA)(OTW)

ANTHONY J. ANNUCCI, et al.,

               Defendants.

------------------------------x
                                          August 20, 2021
                                          10:40 a.m.
Before:

                    HON. ONA T. WANG,

                                          U.S. Magistrate Judge


                         APPEARANCES


CRAVATH, SWAINE & MOORE, LLP
     Attorneys for Plaintiffs
BY:  DAVID M. STUART
     MALAVIKA MADGAVKAR
     REBECCA SCHINDEL

LETITIA JAMES
     Attorney General of the State of New York
BY:  NEIL SHEVLIN
     Assistant Attorney General
```

1          (Case called)
2          THE DEPUTY CLERK: Please state your appearances for
3  the record.
4          MR. STUART: David Stuart, Cravath, Swaine & Moore for
5  the plaintiffs.
6          MS. SCHINDEL: Rebecca Schindel, Cravath, Swaine &
7  Moore, also for the plaintiffs.
8          MS. MADGAVKAR: Malavika Madgavkar, Cravath, Swaine &
9  Moore, also for the plaintiffs.
10         THE COURT: Good morning.
11         MR. SHEVLIN: Your Honor, good morning. Neil Shevlin
12 from the Office of Attorney General for the supervising
13 defendants.
14         THE COURT: Good morning, everyone.
15         Welcome to a status conference in a world pandemic. I
16 wanted to let you know that thank you for filling out the form
17 for contact tracing, we are going to keep our masks on during
18 the entire proceeding. In order for the court reporter to be
19 able to hear you better if you are talking, just make sure,
20 like I am doing, talk into the microphone, maybe talk a little
21 more slowly than you normally would. There is no need to stand
22 up when you are addressing the Court. OK? All right.
23         I have the parties' agenda and maybe I will ask one of
24 Ms. Smith's attorneys to give me a summary about any issues
25 with case schedule.

         MR. STUART:  Yes, your Honor.  Happy to do that.  If you don't mind, I will just give a brief background on how we got to where we are today.

         So, plaintiff Smith filed this action in February alleging rape and sexual assault by correctional staff while she was incarcerated at Bedford Hills.  We added a second plaintiff, plaintiff Doe, in July after learning that one of the guards who had raped plaintiff Smith also sexually assaulted plaintiff Doe.  And obviously this is, as your Honor knows, a significant and pervasive issue at the Bedford Hills Correctional Facility.  This is the fifth related case that's been filed before Judge Abrams in the last five years.

         While plaintiff Smith first made her allegations more than two years ago in 2019 which were then reiterated by the Legal Aid Society and by our law firm over the course of 2019 and 2020, we have had no indication that an appropriate investigation was done.  We have been told by the Office of the Attorney General that while it can agree to represent five of the defendants, it has to wait for the office of Special Investigations at DOCCS to complete investigations of the plaintiffs' allegations before the Office of the Attorney General can decide to represent the remaining defendants.  So, we have 15 now unrepresented defendants.  While I believe --
and this is based on good collaboration with Mr. Shevlin of the Office of the Attorney General that he is doing what he can.

1  Unfortunately we have been in a holding pattern since
2  commencing the case while we wait for the Office of Special
3  Investigations to complete its work.
4           The most important thing to plaintiffs is that we
5  commence discovery and that we commence discovery that's
6  related to the specific allegations in this case.  So, I think
7  that based on our discussions over the course of yesterday, the
8  Attorney General's office now agrees that it can commence
9  document discovery by September 30th.  But, we want to be sure
10 that the document productions that are made pursuant to the
11 discovery requests that we served at the end of July include
12 materials that are relevant to the specific allegations of this
13 case.
14          THE COURT:  OK.  I have a question for you.  Can you
15 tell me, I am assuming that the one guard who assaulted both
16 plaintiffs is also proceeding anonymously?
17          MR. STUART:  Your Honor, what we agreed to do, sort of
18 on our own volition -- the answer is yes, but we agreed that
19 because of the sensitivity of these allegations and presumably
20 these defendants have families and others who we wanted to
21 protect from the allegations, we thought it was best to
22 anonymize the defendants who were directly involved in the
23 actions.
24          THE COURT:  Can you tell me which anonymous?
25          MR. STUART:  Which ones?

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | THE COURT:  Yes.                                                     |
| 2  | MR. STUART:  Exactly.  Sergeant B, your Honor.                       |
| 3  | THE COURT:  I did also want to reference the issue                   |
| 4  | that arose I think late last week with our docketing services        |
| 5  | which caused a little bit of a flurry on our end to make sure        |
| 6  | that it was clarified but thank you for alerting the Court and       |
| 7  | alerting chambers.  It is certainly easier if something like         |
| 8  | that hits the docket before 5:00 to contact us directly, but if      |
| 9  | you do not get a quick response do let us know.  I think we are      |
| 10 | all sensitized enough to it now that it hopefully won't happen       |
| 11 | again but because of the sensitivity here I am going to ask          |
| 12 | counsel to also be, again, be the extra pair of eyes and follow      |
| 13 | up with us, particularly on issues like this.  OK?                   |
| 14 | MR. STUART:  Absolutely.                                             |
| 15 | THE COURT:  So, you have a proposed case schedule that               |
| 16 | has rolling production starting on September 30th, a response        |
| 17 | by the represented defendants on October 1st, and then October       |
| 18 | 18th either for status or completion of the representational         |
| 19 | analysis, right, and that's agreed by the parties?                   |
| 20 | MR. STUART:  That's correct, your Honor.                             |
| 21 | THE COURT:  And that will be in -- you suggest you                   |
| 22 | will submit a proposed case management plan after that.  So,         |
| 23 | what I am going do is on the status report I will so order           |
| 24 | those dates, and then I will -- let me look at the date in           |
| 25 | October.  I am fully confident that counsel in this case will        |

1    keep up with all of your scheduling obligations but I want to
2    set a date myself for a joint status letter on October 22nd,
3    that's the Friday after the 18th, if you haven't already
4    submitted a status letter or proposed case management plan.
5    That way we will make sure to keep you on the calendar and put
6    you on for another conference.
7             MR. STUART:  That's great.
8             THE COURT:  OK.
9             MR. STUART:  I appreciate that.
10            THE COURT:  And then I think that takes care of issue
11   no. 2 on your agenda on ECF 94.  And then, as to issue no. 3
12   and 4, as far as I can see from the letter, not quite ripe yet
13   and I trust that you will be able to work things out.
14            MR. STUART:  I believe we will.
15            MR. SHEVLIN:  Yes, your Honor.
16            MR. STUART:  We have been working well together so
17   far.
18            THE COURT:  Great.  I have no ownership or authorship
19   interest in the model stipulation and proposed protective
20   order.  I generally put that out there in case there are
21   parties who have problems agreeing on anything that at least
22   they have something to start with or something to work with.
23   If there is something that counsel in this case thinks is more
24   appropriate, I fully trust that you can do it and submit a
25   proposed protective order, and even if it is different from the

L8K5smiC

1   one suggested in my individual practices, I probably won't have
2   a problem with it.  OK?
3           MR. SHEVLIN:  Yes, your Honor.
4           THE COURT:  Mr. Shevlin, I made you stay quiet this
5   whole time.  Is there anything else you want to add or raise
6   with the Court?
7           MR. SHEVLIN:  No, your Honor.  I guess with respect to
8   no. 3, just to explain to your Honor what the issue is.  As
9   things stand now, based on Judge Abrams' order, I can
10  essentially discuss names of plaintiffs and defendants with my
11  clients but third-parties are off limits.  Obviously, to the
12  extent OSI needs to do an investigation, they're going to have
13  to know names.  Now, they did already conduct an interview with
14  defendant Doe so they do have probably a lot of materials, but
15  they would like to obviously look at the allegations in the
16  complaint.  Also, going forward in terms of my getting
17  documents, I'm going to have to speak with inmate record
18  coordinators from probably various facilities and they're going
19  to have to know names.  So, that's that issue.  And we have
20  discussed coming up with a joint stipulation to address that
21  that we will submit to the Court.
22          THE COURT:  Right.  I think if you have a proposed
23  protective order with a proposed undertaking that you use in
24  connection with the protective order, that's generally how I
25  have seen it done.  So, I think that probably helps to push the

1    negotiation of the protective order up to be something that you
2    should be doing in the near term.
3             MR. SHEVLIN:  So what your Honor is saying is to craft
4    the stip of confidentiality in such a way that this would
5    encompass that language.  OK, fine.
6             THE COURT:  Exactly.  I am sure Mr. Stuart and his
7    co-counsel have lots of experience with this too, that normally
8    that's accompanied by an undertaking that the person to whom
9    the confidential information is disclosed also agrees to
10   keep -- to follow the order and undertake to follow the order
11   and comply with it.  OK?
12            MR. STUART:  Yes.
13            MR. SHEVLIN:  OK, your Honor.
14            THE COURT:  Anything else any side wants to add?
15            MR. STUART:  If you don't mind, one quick point, your
16   Honor, and that is that I just don't want to leave the
17   impression that any of the anonymity requirements had impeded
18   OSI's ability to conduct the investigation because these
19   allegations were made in grievances back in 2019.
20            THE COURT:  I understand.
21            MR. STUART:  OK.  Thank you.
22            THE COURT:  Yup.  Anything else?
23            MR. STUART:  No, thank you.
24            THE COURT:  Ms. Schindel or Ms. Madgavkar, as well.
25            OK.  Thank you very much.  We are adjourned.  I will

1  expect a joint status letter October 22nd after which we will
2  see if, if and when we have our next status conference.  We
3  will keep a watch on the pandemic, hopefully we can continue to
4  meet in person but we will, of course, observe all of our
5  precautions as well.
6             In addition, the October 22nd date should not in any
7  way stand in the way of the confidentiality stipulation.  I
8  expect that sooner rather than later.  Do you want me to give
9  you a due date or do you think you can handle it?
10            MR. SHEVLIN:  I think we can handle it, your Honor.
11 If we run into problems, I am sure you will hear from us.
12            THE COURT:  OK.  When do you think I might -- I won't
13 order the date but I just want to know when we should be on the
14 lookout for a proposed order.
15            MR. SHEVLIN:  I would say probably a couple weeks,
16 your Honor.
17            THE COURT:  OK.  All right, great.
18            Thank you, Ms. Utter.
19            We are adjourned.  I ask the parties to order a copy
20 of the transcript and share the cost.  All right?  Thank you.
21            MR. STUART:  We will.
22            THE COURT:  Thank you.  Have a great weekend,
23 everyone.
24                              o0o
25