**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE SMITH,<br><br>MARY DOE,<br><br>         Plaintiffs,<br><br>  -against-<br><br>ANTHONY J. ANNUCCI, *et al.*,<br><br>         Defendants. | 1:21-CV-01715-RA-OTW<br>[REL. 1:17-CV-07954-RA-OTW] |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MAHER, NUNEZ AND SHIPLEY'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

I.  PRELIMINARY STATEMENT ........................................................................... 1

II. STATEMENT OF FACTS .................................................................................... 2

III. STANDARD OF REVIEW ................................................................................... 5

IV. ARGUMENT ......................................................................................................... 5

    A.  Defendants Nunez, Maher and Shipley Were Deliberately Indifferent to Plaintiffs' Safety by Creating a Policy or Custom of Inadequate Investigations of and Discipline for Sexual Misconduct by Prison Staff, Despite Knowing of the Serious Risk of Sexual Abuse. ................................................................................................... 5

    B.  Moving Defendants' Arguments Regarding Their Grossly Negligent Supervisor of Subordinates Are Irrelevant. ............................. 11

    C.  Moving Defendants Are Not Entitled to Qualified Immunity. .................. 12

V. CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 5

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ........................................................... 5, 6, 11

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) ........................................................ 6

*Doe v. Kaplan*, No. 16-CV-9870, 2018 WL 1449523 (S.D.N.Y. Mar. 22, 2018) .................................................................................................................................. 8

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) ........................... 9

*Keith v. Koerner*, 843 F.3d 833 (10th Cir. 2016) ................................................................. 9

*Porro v. Barnes*, 624 F.3d 1322 (10th Cir. 2010) ................................................................ 6

*Pusepa v. Annucci*, No. 17-CV-1765 (RA), 2019 WL 690678 (S.D.N.Y. Feb. 19, 2019) ................................................................................................................ 1, 7, 8

*Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31 (2d Cir. 2017) ................................................... 5

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) .......................................... 5

*Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021) ................................................................................................... passim

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) ................................................... 1, 6, 7

I.       PRELIMINARY STATEMENT

The Second Circuit's decision in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), narrowed the bases for supervisory liability for deliberate indifference claims under 28 U.S.C. § 1983. But even after *Tangreti*, a prison official can still be held liable where he bears "the responsibility for creating or allowing the continuance of policies and customs that allowed sexual violence at [DOCCS facilities] to occur". *Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *10 (S.D.N.Y. Sept. 28, 2021) (quoting *Pusepa v. Annucci*, No. 17-CV-1765 (RA), 2019 WL 690678, at *5 (S.D.N.Y. Feb. 19, 2019)). Defendants Maher, Nunez and Shipley ("Moving Defendants") now ask this Court to cull supervisory liability further, by holding that only supervisors with particular types of policymaking powers, such as the "authority to implement changes to DOCCS' policies regarding things such as the placement of video cameras within facilities, the assigning of male officers to different areas of female prisons, or the frequency of surprise supervisory rounds", can be charged with policymaker liability. (Mot. at 18.) This theory is irreconcilable with *Stone* and the cases on which it relied, and it should be rejected.

As alleged in the Amended Complaint, Moving Defendants are tasked with "determining the standards" for investigating "complaints of sexual harassment and abuse" (Defendants Maher and Nunez) and "deciding whether and on what terms to pursue disciplinary actions against DOCCS staff who are alleged to have . . . [committed] sexual misconduct" (Defendant Shipley). (Am. Compl. ¶¶ 24-26.) With respect to investigating and disciplining officers who have engaged in sexual misconduct, Moving Defendants are therefore precisely the sort of "senior prison official[s]" who may be held liable under § 1983 for "enacting or failing to enact policies and practices that resulted in

a violation of [Plaintiffs'] rights". *Stone*, 2021 WL 4463033, at *11. Plaintiffs' Amended Complaint details the many ways in which Defendants Maher, Nunez and Shipley established a custom of enabling sexual abuse and failed to enact policies and practices that would prevent sexual abuse by DOCCS staff (Am. Compl. ¶¶ 142, 144, 149-56), despite knowing of the substantial risks of sexual assault to female prisoners in DOCCS facilities and in the Bedford Hills Correctional Facility ("BHCF" or "Bedford Hills") in particular (Am. Compl. ¶¶ 131-41). Because it "has long been clearly established that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Constitution", *Stone*, 2021 WL 4463033, at *11, Moving Defendants' motion must be denied.

## II.   STATEMENT OF FACTS

Plaintiffs Smith and Doe were raped, sexually exploited and sexually harassed by prison guards while imprisoned in Bedford Hills Correctional Facility in 2019. (Am. Compl. ¶¶ 1, 6-15.) Over the course of two months, Plaintiff Smith was raped by a correction officer and a sergeant, forced to perform oral sex on the same correction officer and sexually assaulted by another correction officer, who inserted her ungloved finger into Plaintiff Smith's vagina. (*Id.* ¶ 9.) In several of these instances, other officers were aware of and present for the misconduct—indeed, with regard to the oral sex incident, two correction officers even served as "look-out men" while it happened—and yet none reported the assaults or intervened to protect Plaintiff Smith. (*E.g.*, *id.* ¶¶ 10, 13.) Although Plaintiff Smith filed numerous grievances and told no fewer than nine DOCCS employees about the sexual abuse she endured—all of whom had a duty to report such information—DOCCS staff failed to investigate her complaints or to take any action to protect her from her abusers. (*Id.* ¶¶ 12, 191.)

Plaintiff Doe was also beaten and forced to perform oral sex by one of the same sergeants who later went on to rape Plaintiff Smith. (*Id.* ¶ 6.) That assault took place in a bathroom, which Plaintiff Doe was cleaning as part of her job responsibilities, just feet away from where another correction officer was sitting. (*Id.* ¶ 69.) When Plaintiff Doe left the bathroom after the assault, she was visibly upset and asked the correction officer sitting outside the bathroom to leave her work assignment early. (*Id.*) The correction officer "smirked knowingly and said she could". (*Id.*) Plaintiff Doe decided not to report the incident to prison authorities, as she feared that nothing would be done to protect her, and she knew that an investigation where "it was her word against a sergeant's" would not end well. (*Id.* ¶¶ 67-69.)

Plaintiffs Smith and Doe are far from the only inmates at Bedford Hills to experience sexual abuse or assault, as Moving Defendants and this Court well know. (*Id.* ¶¶ 136-138.) Indeed, at all relevant times, Moving Defendants "were aware that sexual harassment, exploitation and assault of inmates by staff is a persistent and prevalent problem at BHCF, and that numerous instances of staff sexual misconduct at BHCF by officers have resulted in criminal charges", including at least 10 charges since 2009, and have resulted in a number of civil actions in both state and federal court. (*Id.* ¶¶ 137-39.) Indeed, at least one of the Moving Defendants is named in another civil suit arising from similar allegations. (*Id.* ¶ 138.) Moving Defendants were likewise aware that reported complaints "represent only a fraction of incidents of sexual harassment, exploitation and abuse in prisons, given the prevalence of under-reporting in such environments", and they were aware of prior complaints against one or more of the correction officers named in this case. (*Id.* ¶¶ 140-41.)

Despite knowing of the risk and frequency of sexual misconduct by prison staff at BHCF, Moving Defendants failed to enact policies to protect inmates from such sexual abuse. (*Id.* ¶ 144.) In particular, they failed to employ obvious measures to reduce the risk of sexual misconduct between staff and female prisoners and to prevent misconduct from occurring, escalating or continuing, such as using polygraphs for purposes of investigations or conducting random interviews of staff and inmates. (*Id.* ¶ 149.) Moving Defendants also failed to "ensure that investigators applied consistent standards in determining whether to substantiate an allegation of staff sexual misconduct and refer it for administrative action or timely obtain physical evidence when such evidence was available". (*Id.* ¶ 150.) Moving Defendants likewise failed to "ensure that investigators gave weight to indicia of sexual misconduct in the absence of physical evidence, including evidence of staff persons being seen out of place; staff persons engaging in behavior suggestive of an inappropriate relationship; and staff giving contradictory statements to investigators", or to "ensure that investigators gave adequate weight to the credibility of prisoner witnesses and failed to ensure that investigators did not give undue weight to statements of staff". (*Id.* ¶¶ 151-52.) And Moving Defendants "failed to ensure that investigations into allegations of sexual abuse were thoroughly and timely conducted", which meant that investigations instead "often resulted in biased and unreliable refusals to substantiate women prisoners' complaints". (*Id.* ¶ 153.) Moving Defendants also made no effort "to ensure that their investigations gave adequate weight to similar prior complaints of sexual misconduct against the same staff member". (*Id.* ¶ 154.) Moving Defendants further "created a culture, custom and practice of ignoring sexual abuse and assault by failing to investigate or discipline BHCF officers who knew

of instances of sexual abuse, assault or harassment against inmates by DOCCS staff and failed to report such information". (*Id.* ¶ 155.) By failing to implement policies that would ensure the adequate investigation and discipline of correction officers who committed sexual assault, Moving Defendants enabled prison officials to continue preying on female inmates at Bedford Hills, including Plaintiffs, with impunity. (*Id.* ¶¶ 203-06, 209-10.)

### III. STANDARD OF REVIEW

In assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must consider whether the operative complaint pleaded "enough facts to state a claim to relief that is plausible on its face". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing whether a complaint has satisfied this plausibility standard, the Court must "accept[] all factual allegations as true". *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

### IV. ARGUMENT

    **A.** **Defendants Nunez, Maher and Shipley Were Deliberately Indifferent to Plaintiffs' Safety by Creating a Policy or Custom of Inadequate Investigations of and Discipline for Sexual Misconduct by Prison Staff, Despite Knowing of the Serious Risk of Sexual Abuse.**

Before the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the test for assessing liability under § 1983 "was for many years governed by the factors set out in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)", which "identified five ways in which a plaintiff may establish a supervisory defendant's 'personal involvement'

5

in a constitutional violation:

> '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.'"

*Stone*, 2021 WL 4463033, at *6 (quoting *Colon*, 58 F.3d at 873). The Supreme Court's decision in *Iqbal* "called the *Colon* factors into some doubt", and courts across the country reassessed the scope of supervisory liability in light of the Supreme Court's analysis. *Id.* Several circuits, including the Tenth Circuit, concluded that, after *Iqbal*, "there's no special rule of liability for supervisors". *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). In *Tangreti*, the Second Circuit joined those circuits in reaching the same conclusion. 983 F.3d at 618.

This does not mean, however, that the *Colon* factors have been entirely abrogated. As this Court held three months ago in *Stone*, a supervisory prison official may be liable under Section 1983 where he bears "the responsibility for creating or allowing the continuance of policies and customs that allowed sexual violence at [DOCCS facilities] to occur". 2021 WL 4463033, at *10 (quoting *Pusepa*, 2019 WL 6090678, at *5); *see also id.* at *9 (citing, *inter alia*, the Tenth Circuit's opinion in *Dodds*, which explained that post-*Iqbal* "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution", *Dodds v.*

6

*Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).  Thus, to establish supervisory liability following *Tangreti*, a plaintiff must show that (1) "a senior prison official" played a "role in creating a policy by which violations of the Eighth Amendment occurred", (2) the official "acted with the necessary *mens rea* of deliberate indifference", and (3) "these policies or customs proximately caused the plaintiffs' injuries".  *Stone*, 2021 WL 4463033, at *9 (quoting *Tangreti*, 983 F.3d at 619).  Plaintiffs have adequately pleaded all three elements with respect to Defendants Nunez, Maher and Shipley.

First, Plaintiffs have plausibly alleged that Moving Defendants "bore the responsibility for creating or allowing the continuance of policies and customs that allowed sexual violence at [Bedford Hills] to occur".  *Stone*, 2021 WL 4463033, at *10 (quoting *Pusepa*, 2019 WL 6090678, at *5).  Defendants Maher and Nunez, the Chief of Investigations for the Office of Special Investigations and the Deputy Chief of the Sex Crimes Unit for the Office of Special Investigations, respectively, are responsible for overseeing and setting the protocols and procedures for the investigation of sexual misconduct by prison staff.  As alleged in the Amended Complaint, they are responsible for:

> the investigation of complaints of criminal or departmental misconduct by DOCCS employees, including complaints of sexual harassment and abuse; for determining the standards by which such complaints are assessed; for reviewing all investigations of such complaints; for determining whether such complaints are substantiated; and for recommending whether or not responsive action should be taken, including referrals to the BLR for disciplinary action against staff and referrals of allegations of criminal misconduct to law enforcement officials.

(Am. Compl. ¶¶ 24-25.)  Defendant Shipley, the Director of the Bureau of Labor Relations, likewise has authority to set DOCCS' policies and customs for disciplining officers who engage in sexual misconduct.  As alleged in the Amended Complaint, he is

7

responsible for, among other things, "deciding whether and on what terms to pursue disciplinary actions against DOCCS staff who are alleged to have violated DOCCS rules and regulations, including violations consisting of the commission of sexual misconduct". (*Id.* ¶ 26.)

With the power to set the "standards" for investigating allegations of sexual abuse and set the "terms" for whether and when to pursue disciplinary actions against prison staff who engaged in sexual misconduct (*id.* ¶¶ 24-26), Moving Defendants "had the authority to create or allow the continuance of [DOCCS] policies that led to sexual violence or allowed it to continue". *Stone*, 2021 WL 4463033, at *10 (quoting *Pusepa*, 2019 WL 690678, at *5). Moving Defendants resist this characterization, arguing that they do not have "any authority to engage in policymaking to prevent the sexual assault of female inmates" because they are not responsible for setting a specific subset of policies that might affect inmate safety at Bedford Hills. (*See* Mot. at 17-18.) This argument is a nonstarter. The authority to set policies or customs related to investigating and disciplining staff empowers Moving Defendants to either deter sexual abuse, by making clear that misconduct will be thoroughly examined and punished, or else to incubate it, by creating an environment where officers know they can sexually assault inmates with impunity. Indeed, courts in both this circuit and elsewhere have recognized as much. *See, e.g.*, *Stone*, 2021 WL 4463033, at *10 (holding that the Acting Commissioner of DOCCS and the Associate Commissioner and Prison Rape Elimination Act Coordinator for DOCCS could be liable as policymakers under § 1983 because their responsibilities included, among other things, "responsibility for the DOCCS unit charged with investigating allegations of sexual abuse"); *see also Doe v.*

8

*Kaplan*, No. 16-CV-9870, 2018 WL 1449523, at *4, *7 (S.D.N.Y. Mar. 22, 2018) (holding that "the lead corrections officer at [the Office of Special Investigations ("OSI")]" was a policymaker for purposes of assessing supervisory liability, in part because he was responsible for "investigating . . . allegations of sexual misconduct within the facility"); *Keith v. Koerner*, 843 F.3d 833, 846-47 (10th Cir. 2016) (holding that a jury could reasonably infer that a prison warden "was personally involved in failing to enforce policies in a way that allowed sexual misconduct to occur" given that the warden's "practices created an atmosphere where employees . . . faced minimal supervision and little threat of investigation or discipline for inappropriate sexual behavior with inmates"). Moving Defendants are plainly "senior prison official[s]" responsible for "enacting or failing to enact policies or practices that resulted in a violation of [Plaintiffs'] rights". *Stone*, 2021 WL 4463033, at *9, *11.

Second, Plaintiffs have adequately pleaded that Moving Defendants knew of and disregarded a serious risk of sexual abuse in Bedford Hills, "in that the complaint 'include[s] allegations of the facts or events [Plaintiffs] claim give rise to an inference of knowledge'". *Id.* at *10 (quoting *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021)). These facts include statistics on the prevalence of rape within DOCCS prisons, and within Bedford Hills in particular (Am. Compl. ¶¶ 44-46); the hundreds of complaints of staff sexual misconduct that have been reported to DOCCS' OSI in recent years, of which Moving Defendants—given their roles—are surely aware (*id.* ¶ 47); the fact that several instances of staff sexual misconduct within Bedford Hills have resulted in criminal charges, and other instances have led to civil suits in state and federal court (*id.* ¶¶ 137-39); the fact that one of the Moving Defendants is named in

9

another civil suit arising from similar allegations (*id.* ¶ 138); and the fact that all Moving Defendants were aware of prior complaints against one or more of the correction officers named in this case, and yet did nothing to prevent him from harming additional women (*id.* ¶¶ 140-41). These and other similar facts have been sufficient to plead deliberate indifference before. *See, e.g., Stone*, 2021 WL 4463033, at *10.

Finally, "Plaintiffs have adequately described a series of policies, customs, or enforcement practices within [Moving Defendants'] areas of responsibility that are linked to the sexual abuse allegedly suffered by Plaintiffs". *Id.* at *11. As alleged in the Amended Complaint, Defendant Maher and Nunez failed to set and enforce consistent standards for: determining whether to substantiate allegations, the timely collection of physical evidence, weighing circumstantial evidence of misconduct and contradictory statements, handling "he-said-she-said" situations, timely and thoroughly conducting investigations or adequately weighing similar prior complaints of sexual misconduct against the same staff member. (Am. Compl. ¶¶ 150-54.) All together, these failures plausibly allowed "correction officers to engage in illegal sexual activity without fear of getting caught". *Stone*, 2021 WL 4463033, at *11.

Defendant Shipley, too, "created a culture, custom and practice of ignoring sexual abuse and assault by failing to investigate or discipline BHCF officers who knew of instances of sexual abuse, assault or harassment against inmates by DOCCS staff and failed to report such information". (Am. Compl. ¶ 155.) Indeed, the Amended Complaint is rife with instances where Plaintiff Smith reported the abuse she was suffering to DOCCS staff, and yet no one did anything to help her, despite their duty to do so. (*E.g.*, *id.* ¶¶ 12, 191.) Such a policy or custom of "ignoring sexual abuse and

10

assault" and refusing to discipline wrongdoers (*id.* ¶¶ 155-56) likewise "allowed the correction officer [and higher level] defendants to engage in sexual abuse without fear of being discovered".  *Stone*, 2021 WL 4463033, at *11.

For all these reasons, Plaintiffs have adequately pleaded that each of the Moving Defendants were personally involved in violating Plaintiffs' constitutional rights.

### B. Moving Defendants' Arguments Regarding Their Grossly Negligent Supervisor of Subordinates Are Irrelevant.

Moving Defendants' effort to recast Plaintiffs' Amended Complaint as a gross negligence claim under the fourth *Colon* factor is unavailing.  (Mot. at 18.)  The Second Circuit's decision in "*Tangreti* plainly abrogate[d] the fourth *Colon* factor, which allowed liability for a defendant who was 'grossly negligent in supervising subordinates who committed the wrongful acts'".  *Stone*, 2021 WL 4463033, at *7 (quoting *Colon*, 58 F.3d at 873).  Here, Plaintiffs do not allege that Moving Defendants were "grossly negligent in supervising subordinates *who committed the wrongful acts*", *id.* (emphasis added); indeed, Plaintiffs do not even allege that Moving Defendants were responsible for supervising the correction officers and sergeants who sexually abused Plaintiffs at all. Rather, as set forth above, Plaintiffs allege that Moving Defendants established a custom and practice of allowing prison investigators to ignore allegations of sexual misconduct and/or conduct investigations without taking even the most basic steps to appropriately assess allegations of sexual misconduct.  As a result, Moving Defendants effectively established a policy of inadequate investigation and lax discipline, which led to the violation of Plaintiffs' constitutional rights.

### C. Moving Defendants Are Not Entitled to Qualified Immunity.

Moving Defendants' request for qualified immunity should be denied. "[I]t has long been clearly established that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Constitution." *Id.* at *11. Here, Plaintiffs have adequately alleged Moving Defendants' deliberate indifference to the risk of serious harm to Plaintiffs, for all the reasons set forth above. Moreover, "qualified immunity is typically a fact-specific defense addressed at summary judgment", *id.*, and Moving Defendants have offered no basis for concluding that qualified immunity is appropriate at this stage. Indeed, Moving Defendants only arguments in support of qualified immunity—that "policymaking was not part of the defendants' job responsibilities" and defendants were merely "performing their jobs" of "investigat[ing] and punish[ing] wrongdoing", (Mot. at 19)—lack any legal support and contravene the facts as alleged in Plaintiffs' Amended Complaint. (*See, e.g.*, Am. Compl. ¶¶ 24-26 (detailing Moving Defendants' job responsibilities); Am. Compl. ¶¶ 142, 144, 149-56 (detailing the many ways Moving Defendants did not perform their jobs).) The request for qualified immunity should thus be rejected.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Moving Defendants motion to dismiss Plaintiffs' claims against Defendants Maher, Nunez and Shipley.

In the alternative, to the extent this Court determines that Plaintiffs' Amended Complaint does not adequately allege supervisory liability with respect to Moving Defendants, Plaintiffs respectfully request that the Court dismiss Plaintiffs'

12

claims against Moving Defendants without prejudice and with leave to amend to correct any deficiencies in the pleadings.

December 21, 2021

CRAVATH, SWAINE & MOORE LLP,

by

*/s/ David M. Stuart*
David M. Stuart
A member of the Firm
Rebecca J. Schindel
Mika Madgavkar

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dstuart@cravath.com

*Attorneys for Plaintiffs Jane Smith and Mary Doe*