

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-8561

February 11, 2022

By ECF
Hon. Ona T. Wang
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:   Jane Smith v. Annucci, *et al.*,
>       21-CV-01715 (RA)(OTW) [rel. 17-CV-07954 (RA)(OTW)]

Your Honor:

I write respectfully pursuant to the Court's January 18, 2022, and February 3, 2022 (ECF No. 127) Orders to provide the Court with an update pertaining to discovery, including: (i) information pertaining to the number of complaints received from incarcerated individuals at Bedford Hills Correctional Facility ("BHCF") between 2015 and 2021, pertaining to sexual assaults and excessive force; and (ii) the status of defendants' responses to Plaintiff Smith's First Set of Document Requests to Defendants Annucci, Effman, Maher, Nunez, and Shipley (hereinafter "RFP") and when defendants anticipate responding to outstanding document requests.

**Complaints of Sexual Assault and Excessive Force**

During the period 2015-2021, there were 85 complaints of excessive force made by incarcerated individuals at BHCF. This can be broken down by year as follows: 2015 (10); 2016 (11); 2017 (5); 2018 (9); 2019 (17); 2020 (20); and 2021 (13). During that same period, there were 154 complaints of sexual abuse made by incarcerated individuals at BHCF. This can be broken down by year as follows: 2015 (26); 2016 (24); 2017 (18); 2018 (21); 2019 (27); 2020 (23); and 2021 (15).   I have been informed by the New York State Department of Corrections and Community Supervision's ("DOCCS") Office of Special Investigation ("OSI") that if a complaint is made, it is investigated by either OSI or the facility itself. There are no complaints that are not investigated.

**Status of Discovery Production**

At the January 18, 2022 conference, the Court had directed defendants to: (i) commence a rolling production by today of documents responsive to plaintiff's RFP; and (ii) advise the Court as to what documents remain to be produced and when they will be produced. For ease of reference, attached is a copy of plaintiff's RFP.

Since the January 18, 2022 conference, defendants have not produced any additional documents although I received additional documents this afternoon that I will need to review and Bates stamp for production by next Friday, February 25, 2022. The reason for the slow rate of production is two-fold. First, with respect to documents that will be obtained from DOCCS' Central Office, in either hard copy or electronically, much of DOCCS' support staff is currently working on meeting the directive to close six facilities across the State by next month. This has been an involved and time-consuming process and it has slowed the pace of production in this case. Second, with respect to documents to be provided by BHCF, that facility has been short-staffed, which has slowed the pace of production of documents in this case. I have spoken with DOCCS' Counsel's Office and they are working to make staff available at both Central Office and BHCF to obtain the responsive documents. With that in mind, below is a summary of document requests defendants have already responded to as well as document requests that still need to be responded to and the dates DOCCS anticipates responding to these requests:

A.      Defendants have fully responded to Requests 2, 7, 10, 22, 23, 27, and 32.

B.      Defendants have responded in part to the following Requests but are in the process of obtaining additional responsive documents:  5, 8, 9, 12, 13, 14, 15, 18, 34, 35[1], and 37. DOCCS has advised me that it anticipates providing these documents to me by February 25, 2022.  By March 11, 2022, I will produce the documents or advise opposing counsel of any objections to production.

C.      Defendants have not yet responded to Requests: 1, 3, 4, 6, 11, 16, 17, 19, 20, 21, 24, 25, 26, 28, 29, 30,[2] 31, 33, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, and 49. DOCCS has advised me that it anticipates providing these documents to me by  March 8, 2022.[3] By March 22, 2022, I will produce the documents or advise opposing counsel of any objections to production.

---

[1] Request number 35 pertains to OSI's handbook the production of which is currently being litigated in the matter of Pusepa v. Annucci, No. 17 Civ. 7954 (RA)(OTW).

[2] Defendants need to have a meet-and-confer with counsel for plaintiffs to seek clarification of Request numbers 1 and 30.

[3] Request numbers 20, 26, and 28 pertain, in part, to the 154 OSI files referred to above. The parties will need to have a meet-and-confer to discuss how to proceed with these requests.  Request Number 45 pertains, in part, to the application documents that were discussed at the January 18, 2022 conference and, in part, is the subject of the motion for a protective order filed by defendants (ECF No. 128). Request number 48 pertains to Bedford Hills floor plans that are undergoing a security review.

Thank you.

Respectfully submitted,

/s/ Neil Shevlin
Neil Shevlin
Assistant Attorney General
Neil.Shevlin@ag.ny.gov

Attach.
cc: Counsel for plaintiffs (by ECF)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JANE SMITH,

MARY DOE,

                                        Plaintiffs,

                -against-

ANTHONY J. ANNUCCI, Acting Commissioner
of the New York State Department of Corrections
and Community Supervision,

JASON EFFMAN, Associate Commissioner and
PREA Coordinator for New York State Department
of Corrections and Community Supervision,

STEVEN MAHER, Chief of Investigations, Office
of Special Investigations, New York State
Department of Corrections and Community
Supervision,

CHRISTIAN NUNEZ, Deputy Chief of the Sex
Crimes Division, Office of Special Investigations,
New York State Department of Corrections and
Community Supervision,

JOHN SHIPLEY, Director, Bureau of Labor
Relations, New York State Department of
Corrections and Community Supervision,

SABINA KAPLAN, Superintendent of Bedford
Hills Correctional Facility,

MICHAEL DAYE, Deputy Superintendent for
Security at Bedford Hills Correctional Facility,

ELAINE VELEZ, Assistant Deputy Superintendent
and PREA Compliance Manager at Bedford Hills
Correctional Facility,

CAPTAIN A, Captain at Bedford Hills Correctional
Facility,

1:21-CV-01715-RA-OTW [rel. 1:17-
CV-07954-RA-OTW]


**PLAINTIFF SMITH'S FIRST
SET OF DOCUMENT
REQUESTS TO DEFENDANTS
ANNUCCI, EFFMAN, MAHER,
NUNEZ AND SHIPLEY**

CAPTAIN B, Captain at Bedford Hills Correctional
Facility,

LIEUTENANT A, Lieutenant at Bedford Hills
Correctional Facility,

SERGEANT A, Sergeant at Bedford Hills
Correctional Facility,

SERGEANT B, Sergeant at Bedford Hills
Correctional Facility,

OFFICER A, Correction Officer at Bedford Hills
Correctional Facility,

OFFICER B, Correction Officer at Bedford Hills
Correctional Facility,

OFFICER C, Correction Officer at Bedford Hills
Correctional Facility,

OFFICER D, Correction Officer at Bedford Hills
Correctional Facility,

OFFICER E, Correction Officer at Bedford Hills
Correctional Facility,

UNIDENTIFIED OFFICER, Correction Officer at
Bedford Hills Correctional Facility,

GRIEVANCE SUPERVISOR A, Grievance
Supervisor at Bedford Hills Correctional Facility,

INVESTIGATOR A, Investigator at Bedford Hills
Correctional Facility,

         Defendants.

   Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the

Local Rules of Civil Procedure for the Southern District of New York, Plaintiff Jane Smith

hereby requests that You respond in writing to this request and produce the Documents described

below at the office of counsel for Plaintiff, Cravath, Swaine & Moore LLP, Worldwide Plaza,

825 Eighth Avenue, New York, New York 10019, within thirty (30) days of service hereof, or at such earlier time as the Court may order or the Parties shall agree.

## DEFINITIONS

1.      The full text of the definitions and rules of construction set forth in Rule 26.3 of the Local Rules of Civil Procedure for the Southern District of New York are incorporated by reference into this discovery request, including: "Communication", "Document", "Identify", "Parties", "Person", "Concerning", "All", "Any", "Each", "And" and "Or".

2.      "Action" refers to the above-captioned matter.

3.      "BHCF" means Bedford Hills Correctional Facility.

4.      "Defendants" means any and all of the individual defendants in this Action.

5.      "DOCCS" means New York State Department of Corrections and Community Supervision and any representative thereof.

6.      "Law Enforcement Agency" means Bureau of Criminal Investigation of the State Police, a county sheriff's office, a local police department or a district attorney's office.

7.      "OSI" means the DOCCS Office of Special Investigations.

8.      "Sanction" means any form of discipline imposed on DOCCS staff, whether formal or informal, including but not limited to: reprimands; counseling; loss of vacation time; limitations on inmate contact; limitations on access to certain areas of the prison; removal of rights to certain keys; enhanced supervision; transfers from bid positions; transfers from female housing units; transfers from women's prisons; referrals to the Bureau of Labor

Relations or to any Law Enforcement Agency; suspensions; terminations; and any steps taken to protect female prisoners in response to specific allegations of Sexual Misconduct.

9.      "Sexual Misconduct" means any of the following directed towards a female inmate by DOCCS staff, with or without the purported consent of the woman:  acts or attempts to commit acts of rape; sexual intercourse; anal intercourse; oral sex; sodomy; sexual assault; sexual abuse; sexual harassment; sexual contact; sexual touching, including physical contact in a sexual manner, either directly or through clothing, of the genitalia, anus, groin, breasts, inner thighs or buttocks; obscenity; indecent exposure; voyeurism; sexual comments; and the unreasonable invasion of privacy.

10.      "State" means state precisely, in full detail and with particularity.

11.      "TBU" means the BHCF Therapeutic Behavioral Unit.

12.      "You" and "Your" means the Defendants served with Plaintiff Smith's First Set of Document Requests, individually and collectively.

## INSTRUCTIONS

1.      In responding to these Requests, please produce separately all responsive Documents in Your possession, custody or control, or in the possession, custody or control of Your agents and representatives.

2.      If You claim any form of privilege or any other objection, whether based on statute, common law or otherwise as a ground for not producing any requested Document, please furnish a list Identifying each Document for which the privilege or other objection is claimed together with subject matter, basis on which a privilege or other objection is claimed, and the paragraph(s) of these Requests to which such Document responds.  If You claim

4

privilege or any other objection with regard to only part of a Document, produce the part to which there is no objection and include such Document on the list described in this paragraph.

3.　　　If any Document or copy thereof responsive to these Requests was but is no longer in Your possession, custody or subject to Your control, please State and specify in detail for each such Document:  date, sender, recipient, Persons to whom copies were provided, together with their job titles, the information contained therein, the date upon which it ceased to exist, the disposition that was made of it and the identity of all Persons having knowledge of the contents thereof.

4.　　　If no Documents are responsive to a particular Request, State that no responsive Documents exist.

5.　　　In making the production, produce all Documents as kept in the normal course of business and Identify the file from which each Document was taken.

6.　　　These Requests shall be deemed to be continuing so as to require supplemental production from time to time up until the date of trial.

7.　　　Unless otherwise specified, the relevant time period for all Requests is January 1, 2015 to the present.

## **DOCUMENTS REQUESTED**

1.　　　All Documents Concerning the number, description of duties and responsibilities and post order within BHCF for every post held by a Defendant in this Action.

2.　　　All Documents Concerning the number, job titles and description of female-only or male-only posts at BHCF and the policies, procedures and practices by which such posts are selected and filled.

3.     All Documents Concerning how assignments of correctional staff are made within BHCF, including but not limited to any consideration of and/or limitations on DOCCS employees' ability to bid for or otherwise request a post.

4.     All Documents Concerning efforts to remove BHCF staff from assigned posts because of allegations and/or finding of Sexual Misconduct.

5.     All Documents Concerning efforts to reduce the risk of Sexual Misconduct between BHCF staff and female inmates and to prevent Sexual Misconduct from occurring, escalating or continuing, including but not limited to implementing measures such as heightened monitoring of situations where there have been warning signs of Sexual Misconduct or inappropriate relationships; preventing staff access to an inmate who has made allegations of Sexual Misconduct against the staff while the allegation is investigated; searches of correctional staff; use of lie detectors; real-time review of video camera feeds; periodic review of camera footage; use of electronic recording devices; exit interviews of prisoners upon transfer and release; random interviews of staff and prisoners; increased installation of surveillance cameras in BHCF; implementation and enforcement of body camera policies; and frequent, varied and unannounced rounds by supervisory officials.

6.     All Documents Concerning proposed or actual policies, procedures and practices for removing BHCF staff from assigned posts because of allegations and/or finding of Sexual Misconduct, or to otherwise monitor and discipline staff engaged in behavior that constitutes warning signs of Sexual Misconduct, including but not limited to spending a disproportionate amount of time talking to a particular inmate, repeatedly requesting a particular inmate for a particular assignment, discussing their personal life with an inmate or asking an inmate personal questions.

7.      All Documents Concerning the range of disciplinary options and Sanctions that can be taken in response to a complaint or report of Sexual Misconduct by BHCF staff.

8.      All Documents Concerning proposed or actual policies, procedures and practices for screening BHCF staff for potential problems in supervising female prisoners and/or for the propensity to engage in Sexual Misconduct.  This Request includes but is not limited to policies, procedures and practices related to obtaining information regarding current and prospective employees' drug or alcohol problems, incidences of physical or sexual abuse, incidences of violence and incidences of domestic violence, whether from the employee him/herself or from other sources.  Such other sources include but are not be limited to family members, prior employers, treatment providers, law enforcement and court personnel or records.

9.      All Documents Concerning policies, standards, criteria and practices regarding the decision to hire and to continue to employ staff who indicate a propensity to engage in alcohol or drug use, aggressive behavior, domestic violence or Sexual Misconduct.

10.      All Documents Concerning any employee assistance program (*i.e.*, program to counsel and assist staff with mental health, domestic violence or substance abuse issues) available to BHCF staff; criteria by which DOCCS staff are referred to the program; the types of assistance used by the program; the numbers of BHCF employees referred to the program in the past five years; the reasons why such referrals were made; and whether such referrals have been made based on allegations by female prisoners of Sexual Misconduct by staff.

7

11.     All Documents Concerning any resignation by a BHCF staff member while an investigation of Sexual Misconduct with respect to a female prisoner was pending against the staff member.

12.     All Documents Concerning the training of BHCF staff on the supervision of female prisoners and Sexual Misconduct.  This Request includes but is not limited to Documents regarding the needs and history of female prisoners, the signs of Sexual Misconduct, the duty to report Sexual Misconduct, any materials indicating differential training for male staff guarding female inmates as opposed to female staff guarding female inmates and the statute addressing sexual relations between inmates and staff.  This Request also includes but is not limited to Documents regarding the frequency and duration of pre-service and in-service training and whether training is mandatory for staff.

13.     All Documents Concerning the responsibilities, duties and obligations of BHCF staff who observe or become aware of Sexual Misconduct, an inappropriate relationship between a staff member and an inmate or a staff member in a physical location indicating or consistent with engaging in Sexual Misconduct, and the responsibilities, duties and obligations of BHCF staff if told by an inmate that she has been subjected to Sexual Misconduct.  This Request includes but is not limited to Documents regarding to whom staff report observations, complaints or reports of Sexual Misconduct, whether complaints and reports are maintained confidential and the consequences of failing to report observations, complaints or reports.

14.     All Documents Concerning information provided to BHCF staff on prohibitions on Sexual Misconduct, sexual relationships and inappropriate relationships with female inmates including but not limited to information regarding possible Sanctions.

15.     All Documents Concerning policies, procedures, practices, methods and training to reduce or eliminate Sexual Misconduct by BHCF staff.

16.     All Documents Concerning the policies, practices and procedures of supervision at BHCF designed to reduce or eliminate Sexual Misconduct, including but not limited to post orders and supervisory rounds. This Request includes but is not limited to Documents Concerning the frequency, timing, nature and duration of supervisory rounds and the need for, use of and measures to protect the confidentiality of unannounced supervisory rounds.

17.     All Documents Concerning the need for additional supervision or efforts to implement additional supervision when BHCF staff are assigned to or have access to areas that are not capable of observation by other staff or by inmates.

18.     All Documents Concerning the ways, if any, in which male staff guarding female inmates are supervised differently than male staff guarding male inmates.

19.     All Documents Concerning supervision of BHCF staff about whom there have been complaints or reports of Sexual Misconduct and of female inmates who have complained of or reported Sexual Misconduct. This Request includes but is not limited to Documents regarding the use of additional rounds by supervisory staff to monitor and prevent misconduct by accused officers; limitations on accused officer contact with female prisoners generally or with certain female prisoners in particular; requiring the presence of a supervisor or another staff Person when the accused officer is with particular inmates; and/or denying access to an accused officer to particular areas of the prison where Sexual Misconduct is alleged to have occurred.

20.     All Documents Concerning complaints, reports or investigations of activity consistent with or indicative of Sexual Misconduct at BHCF.

9

21.     All Documents (excluding individual medical records) Concerning pregnancies of women in custody at BHCF caused by alleged sexual relationships with DOCCS staff.  This Request includes but is not limited to the number of pregnancies and investigations and actions taken as a result of such pregnancies.

22.     All Documents (excluding individual medical records) Concerning the distribution of birth control to female inmates at BHCF, including but not limited to policies, procedures and practices for addressing request for and distribution of birth control.

23.     All Documents (excluding individual medical records) Concerning the incidences of sexually transmitted infections among female prisoners at BHCF, including but not limited to incidences of transmission without an apparent explanation (*e.g.*, where an STI was not noted at reception).

24.     All Documents Concerning information provided to female prisoners in DOCCS custody on the steps they should take if (a) they experience Sexual Misconduct; (b) they observe Sexual Misconduct, an inappropriate relationship or staff out of place in a manner consistent with Sexual Misconduct; or (c) they are told by an inmate that that inmate has been subjected to Sexual Misconduct.  This Request includes but is not limited to information setting forth how, when, where and to whom to file a complaint about such misconduct and how investigations into allegations of Sexual Misconduct are conducted, including but not limited to whether such investigations are confidential, whether a need exists to preserve physical evidence and whether a need exists for immediate reporting of the misconduct.  This Request includes but is not limited to information provided to female prisoners regarding possible Sanctions for sexual relationships with DOCCS staff, for filing a false complaint or for benefiting from a sexual

relationship with staff.  This Request also includes but is not limited to orientation materials provided at BHCF.

25.    All Documents Concerning state and federal lawsuits filed during the past five years alleging Sexual Misconduct by BHCF staff including but not limited to the Notice of Intention, Claim and Complaint, and all Documents Concerning the resolution of the case, including awards and settlements.

26.    All Documents Concerning allegations of, investigations into, determinations of, responses to and resolutions of allegations of Sexual Misconduct at BHCF. This Request includes all allegations of Sexual Misconduct regardless how initiated, including whether by grievance, complaint, tab, letter to Superintendent, letters to the Commissioner or letters to any DOCCS official; and regardless of who initiated the allegation, whether a prisoner or another source and whether the alleged victim or someone else.  This Request includes all Documents reflecting investigations into such allegations, whether completed or not, and whether substantiated or not.  This Request includes all determinations, responses to and resolutions of such allegations, regardless of whether recommended action was taken.  This Request includes all Documents reflecting referrals to the Bureau of Labor Relations or to any Law Enforcement Agency.  This Request also shall include all Documents reflecting whether the alleged perpetrator of the Sexual Misconduct received any Sanction.

27.    All Documents Concerning requests for transfers or changes in job assignment by BHCF staff or any Defendant (regardless of whether he/she worked at BHCF at the time of the requested transfer/change) based on concerns of Sexual Misconduct or sexual harassment by other staff of themselves, of other staff or of female inmates.

28.     All compilations made Concerning complaints and reports of Sexual Misconduct at BHCF, including but not limited to the numbers of complaints and reports filed, complaints and reports investigated at the facility level, complaints and reports referred to OSI, complaints and reports that were substantiated, complaints and reports that were referred to any Law Enforcement Agency, the number of criminal prosecutions for Sexual Misconduct (whether charged as Sexual Misconduct or as other official misconduct) and the results of such prosecutions, and the numbers, types and lengths of Sanctions imposed by DOCCS.

29.     All Documents Concerning the names, job descriptions and number of staff assigned within the OSI Sex Crimes Unit or anywhere else within DOCCS whose responsibility, in whole or in substantial part, is or was to investigate allegations of Sexual Misconduct by BHCF staff.

30.     For all staff referred to in Request No. 29, all Documents Concerning their education, training and professional experience prior to employment at DOCCS.

31.     For all staff referred to in Request No. 29, all Documents provided to them by DOCCS or as part of their employment by DOCCS to train them in the proper investigation of complaints or reports of Sexual Misconduct.

32.     All Documents Concerning the policies, practices and procedures for handling complaints, reports and grievances of Sexual Misconduct.  This Request includes but is not limited to Documents regarding how complaints, reports and grievances regarding Sexual Misconduct are treated; whether grievances regarding Sexual Misconduct will be accepted; whether complaints, reports and grievances regarding Sexual Misconduct are referred to OSI; whether complaints, reports and grievances about Sexual Misconduct are investigated by any

other DOCCS staff, apart from the investigation by OSI; and how complaints, grievances and reports of Sexual Misconduct that are lodged with supervisory officials are investigated.

33.     All Documents Concerning the time frames, if any, by which investigations into Sexual Misconduct, whether conducted by grievance staff, facility staff, OSI staff or any other DOCCS staff are to be initiated and completed, and all Documents Concerning efforts to ensure such time frames are followed.

34.     All Documents Concerning the policies, practices and procedures related to investigating or disciplining BHCF staff who leave their assigned posts, go to areas of the prison where they have no work-related reason to enter and engage in behavior that is suggestive of inappropriate harassment or relationships.

35.     All Documents Concerning the policies, practices and procedures for conducting investigations of Sexual Misconduct by BHCF staff, including but not limited to: (a) the types of investigative techniques used; (b) how interviews and interrogations are conducted and whether they are conducted by female staff; (c) how complaints and reports of Sexual Misconduct are maintained and whether they are maintained confidentially; (d) how physical evidence is obtained, handled and maintained and how the chain of custody of physical evidence is preserved, including but not limited to procedures Concerning the use of a rape kit; (e) whether assessments of the credibility of witnesses are made, and if so, how; (f) whether patterns of misconduct of alleged perpetrators are considered, and if so, how; (g) the standards and criteria for substantiating a complaint or report of Sexual Misconduct, including but not limited to considerations of the credibility of witnesses; patterns of alleged misconduct by the perpetrator; evidence apart from physical proof and staff corroboration of Sexual Misconduct; prior complaints or reports of Sexual Misconduct against the staff Person; staff presence out of

place or in a physical location suggesting Sexual Misconduct; staff allowing inmates into areas where inmates are not permitted; staff engaging in behavior suggestive of an inappropriate relationship; staff giving contradictory statements to investigators; and staff refusing to speak to investigators or comply with requests for evidence; (h) whether, and in what circumstances, an alleged perpetrator of Sexual Misconduct can be removed from his post or from the prison or placed on leave while the investigation is pending; (i) whether the inmate who is alleged to be the victim of the misconduct is informed of the results of the investigation; and (j) whether and in what circumstances an inmate is charged with a disciplinary offense for filing a false complaint or report or for having had a sexual relationship with an officer.

36.    All Documents Concerning policies, procedures and practices for the use of video cameras and body cameras in BHCF, including but not limited to use of cameras for surveillance or investigative purposes in determining Sexual Misconduct by BHCF staff; policies and practices regarding the installation and maintenance of cameras, including but not limited to the location of cameras; and policies and practices regarding the maintenance and review of video tapes, both in the normal course and for purposes of investigations into alleged misconduct.

37.    All Documents Concerning policies, practices and procedures for protecting BHCF inmates who complain of Sexual Misconduct from retaliation by the alleged perpetrator, other staff or other inmates.

38.    All Documents Concerning the obligation of BHCF staff to cooperate with or participate in investigations into Sexual Misconduct, including but not limited to whether they are required to answer questions, take polygraph tests, allow searches of their lockers or

property, both within and outside the prison or provide physical evidence, including but not limited to sperm and DNA.

39.     All Documents written, created, generated, distributed or maintained by the Bureau of Labor Relations Concerning complaints or reports of Sexual Misconduct by BHCF staff, including any investigations, decisions not to investigate, requests for disciplinary action and types of Sanctions imposed.

40.     All Documents Concerning Communications between DOCCS and any Law Enforcement Agency Concerning complaints, reports or investigations into Sexual Misconduct by BHCF staff.

41.     All Documents Concerning reports, audits or reviews of architectural and design issues within BHCF that discuss a relationship between such architectural or design issues and the existence or amount of Sexual Misconduct within the prison.

42.     All Documents Concerning efforts made by BHCF staff to determine whether female inmates have been victims of sexual, physical or psychological abuse, including but not limited to blank copies of all forms used in intake interviews, pre-sentence reports and counseling reports, and Documents reflecting instructions given to intake interviewers and mental health workers.

43.     Audiotape recording of the disciplinary hearings held on April 22, 2019 and April 30, 2019, related to an incident involving Plaintiff Smith dated April 9, 2019.

44.     For Plaintiff Smith, all Documents Concerning complaints of, investigations into, determinations of and responses to allegations of Sexual Misconduct during her term of incarceration at BHCF.  This Request includes but is not limited to Documents regarding determinations of whether the allegations were substantiated, the reasons for those

determinations, whether the matter was referred to the Bureau of Labor Relations or to any Law Enforcement Agency and whether the alleged perpetrator of the misconduct received any Sanction.

45.     For each of Defendants Captain A, Captain B, Lieutenant A, Sergeant A, Sergeant B, Officer A, Officer B, Officer C, Officer D and Officer E, all Documents from his or her initial date of employment with DOCCS to the present Concerning records of screening tests; psychological tests; pre-service and in-service training; job performance and other evaluations; complaints to police; arrests; convictions; information regarding issues of physical or sexual abuse; treatment for domestic violence, alcoholism or drug abuse; orders or judgments issued by any court; and complaints or reports of, investigations into and determinations of misconduct by them, including but not limited to Sexual Misconduct or any charges brought or Sanctions imposed for any violations of any DOCCS rule.

46.     For Defendants Captain A, Captain B, Lieutenant A, Sergeant A, Officer A, Officer B, Officer C, Officer D and Officer E, each Defendant's regular assignment(s) or post(s) from January 2019 to December 2019.  For Defendant Sergeant B, his regular assignment(s) or post(s) from January 2018 to December 2019.

47.     Documents Identifying and giving the assignment, post or location of all DOCCS staff who were present at, assigned to be present at or assigned to act in a supervisory capacity in the following locations during the following times:

        a.     BHCF school building from January to March 2019;

        b.     BHCF package room on April 8-10, 2019;

        c.     BHCF recreation yard on April 8-10, 2019;

        d.     BHCF TBU on May 17, 2019, May 20, 2019 and June 4-7, 2019;

     e.     BHCF group therapy room on June 4, 2019;

     f.     BHCF medical clinic on June 4-7, 2019; and

     g.     BHCF infirmary on June 4-7, 2019.

48.     Floor plans that accurately reflect the layout of the following locations during the following times, with marks to indicate where fixed cameras were located during the requested period:

     a.     BHCF mess hall from January to December 2018;

     b.     BHCF school building, including bathrooms, from January to March 2019;

     c.     BHCF package room in April 2019;

     d.     BHCF recreation yard in April 2019;

     e.     BHCF TBU from April 1, 2019 to June 30, 2019;

     f.     Elevator bay leading to the recreation area from TBU in June 2019;

     g.     BHCF medical clinic, including bathrooms and examination rooms, in June 2019; and

     h.     BHCF infirmary, including areas for close observation of inmates, in June 2019.

49.     Log books and any other Documents indicating the presence of officers or supervisors maintained on the following dates for the following locations:

     a.     BHCF school building from January to March 2019;

     b.     BHCF package room on April 8-10, 2019;

     c.     BHCF recreation yard on April 8-10, 2019;

d.      BHCF TBU on May 17, 2019, May 20, 2019 and June 4-7, 2019;

e.      BHCF group therapy room on June 4, 2019;

f.      BHCF medical clinic on June 4-7, 2019; and

g.      BHCF infirmary on June 4-7, 2019.

July 30, 2021
New York, NY

CRAVATH, SWAINE & MOORE LLP

by
_____
*/s/ David M. Stuart*
David M. Stuart
dstuart@cravath.com

Attorney for Plaintiff Smith
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000