

**MEMO ENDORSED**

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-8561

February 4, 2022

By ECF
Hon. Ona T. Wang
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    Jane Smith v. Annucci, *et al.*,
               21-CV-01715 (RA)(OTW) [rel. 17-CV-07954 (RA)(OTW)]

Your Honor:

      I write, respectfully, pursuant to the Court's January 18, 2022 Order, to move for a Protective Order regarding plaintiffs' request for a redacted copy of psychological evaluations contained in their employment application files for certain of the defendants in this matter under an Attorneys' Eyes Only designation. The Court should grant defendants a Protective Order for several reasons, including because the evaluations at issue are not relevant, release of the evaluations could pose a serious security concern to the defendants and the New York State Department of Corrections and Community Supervision ("DOCCS"), if the testing methodology were to become public, applicants could seek ways to manipulate the test creating grave security concerns and the possibility of significant financial loss to DOCCS, the material contained in the evaluations are proprietary to a third-party vendor, and the material contained in the evaluations are protected by HIPAA.

**Background**

      Both plaintiffs are former female incarcerated individuals of Bedford Hills Correctional Facility ("BHCF"), a maximum-security, all-women's prison operated by DOCCS and located in Bedford Hills, New York.  See Amended Complaint ("Complaint" or Compl.") ¶ 38. Both assert that during the period of time at issue in this case, 2018-2019, they were sexually assaulted by certain of the defendants while certain other defendants failed to protect them. See generally Compl. With respect to the supervisory defendants, including Commissioner Annucci and Associate Commissioner Effman, plaintiffs allege that they were aware of the dangers faced by female incarcerated individuals at BHCF, in general, and with respect to plaintiffs, in particular, but that they failed to take any steps to ensure the safety of these incarcerated individuals. As a

result of the defendants' purported failure to take steps to protect female incarcerated individuals, the plaintiffs in this case were sexually assaulted. Id.

In Plaintiff Smith's First Set of Document Demands to Defendants Annucci, Effman, Maher, Nunez, and Shipley, at Request Number 45, she seeks:

> For each of Defendants Captain A, Captain B, Lieutenant A, Sergeant A, Sergeant B, Officer A, Officer B, Officer C, Officer D and Officer E, all Documents from his or her initial date of employment with DOCCS to the present Concerning records of screening tests; psychological tests; pre-service and in-service training; job performance and other evaluations; complaints to police; arrests; convictions; information regarding issues of physical or sexual abuse; treatment for domestic violence, alcoholism or drug abuse; orders or judgments issued by any court; and complaints or reports of, investigations into and determinations of misconduct by them, including but not limited to Sexual Misconduct or any charges brought or Sanctions imposed for any violations of any DOCCS rule.

In partial response to this Request, DOCCS produced application files consisting of background-check files and psychological evaluations. Defendants advised plaintiffs as to the existence of these files and stated their objection to producing them. Plaintiffs argued that they are entitled to these materials. The parties met-and-conferred regarding this issue and on January 12, 2022, filed a joint status letter setting out their respective positions. See ECF No. 123. At a status conference on January 18, 2022, the Court directed defendants to file a letter by January 28, 2022, setting forth whether they would agree to produce the background-check files and psychological evaluations in redacted form to plaintiffs under an Attorneys' Eyes Only designation. By letter, dated January 28, 2022, defendants advised the Court that DOCCS had authorized disclosure of the background-check files in redacted form under an Attorneys' Eyes Only designation but that it had not authorized the release of the psychological evaluations.

**Argument**

Under Rule 26(c), a district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed.R.Civ.P. 26(c)(1); Commodity Futures Trading Comm'n v. Parnon Energy Inc., 593 Fed. Appx. 32, 36 (2d Cir. 2014). The Court has broad discretion to determine when a protective order is necessary. U.S. Commodity, 593 Fed. Appx. at 36; see also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

In determining whether to grant a protective order, a court should weigh the privacy rights of the parties against the general public's interest in the information at issue. See S.E.C. v. TheStreet.Com, 273 F.3d 222, 234 (2d Cir. 2001); see also Dorsett v. County of Massau, 762 F. Supp. 2d 500, 514-15 (E.D.N.Y. 2011). "Federal courts are sensitive to … valid prison security issues related to discovery in prisoner civil rights cases[.]" Gross v. Lunduski, 304 F.R.D. 136, 156 (W.D.N.Y. 2014). Courts have recognized the importance of maintaining and exercising caution in matters of prison security. Duamutef v. Hollins, 297 F.3d 108, 113 (2d Cir. 2002). Thus, Federal courts have found good cause to limit disclosure of information implicating the safety and

security of prisons. Gardner v. Univ. of Connecticut Health Ctr., No. 12-cv-1168, 2013 WL 6073430, at *2 (D. Conn. Nov. 18, 2013).

The Court should grant defendants' Motion for a Protective Order for several reasons, including: (i) the information requested is not relevant to the allegations in this case; (ii) release of the requested information into the public sphere, even inadvertently, could create significant security concerns; (iii) If the requested information is released into the public sphere, even inadvertently, applicants would be able to alter their responses in such a way as to manipulate the test, causing security risks and significant financial loss to DOCCS, since they have spent significant amounts of money setting up its psychological testing procedures; (iv) the requested information is proprietary to a third part vendor; and (v) the information sought is protected by HIPAA.

Initially, the information contained in the psychological evaluations is not relevant to the allegations in the Complaint. See Fed.R.Civ.P. 26(b)(1). Plaintiffs allege that the defendants have created a policy encouraging, or, at the very least, tolerating, the sexual assault of female incarcerated individuals. According to plaintiffs, this alleged policy has been implemented in several ways. For example, DOCCS has failed to install enough security cameras, it has failed to ensure a sufficient number of surprise rounds by supervisors, and it has failed to ensure that female incarcerated individuals are not left alone with male officers. See generally Complaint. There is no allegation in the Complaint that DOCCS has failed to properly vet any of its officers, in general, or the defendants, in particular, or that any of the defendants have mental health issue predisposing them to sexually assault female incarcerated individuals.

At the January 18, 2022 conference, plaintiffs argued that they are entitled to the evaluations for two main reasons. First, "[t]o the extent that there is information in the files that these officers have engaged in similar misconduct in the past, predating their employment with DOCS (sic), that is relevant to those claims." See Transcript of January 18, 2022 Conference attached as Exhibit ("Exh." A), at pp. 19-20. In addition, "[w]e have allegations that the defendants have a policy and practice of ignoring sexual assaults against inmates, failing to take steps to prevent such assaults, and failing to investigate or discipline officers who engage in wrongdoing, and to the extent that these files show that they are hiring officers who have a history of misbehavior or misconduct, past arrests, that is pertinent to those allegations." Id. at 19. However, these arguments are not persuasive.

With respect to the officer-defendants, their past criminal history, to the extent they have one, is not relevant to the claims at issue in the Complaint. However, even if it was, plaintiffs have not limited their request to just that information. Instead, they have requested the entire evaluation which consists of many parts having nothing to do with criminal history. See Declaration of Jerome Dawson ("Dawson Declaration"), attached as Exh. B, at ¶¶ 18-19. Moreover, plaintiffs' argument concerning the supervisory defendants might be persuasive if they had any role in hiring the defendants listed in Request Number 45, which they did not. As set forth in the Dawson Declaration, none of the supervisory defendants were involved in hiring the defendants listed in Request Number 45. Id. at ¶¶ 7, 8, and none of them would have had any reason to have access to these evaluations at any point. In fact, Annucci and Effman did not assume their respective positions until 2013, several years after the most recent hire (2010) of the defendants listed in

Request Number 45. Id. ¶ 8. Finally, plaintiffs have sued all defendants in their individual capacity. See Compl. ¶¶ 22-35. Thus, plaintiffs cannot impute liability to Annucci of Effman (or any of the supervisory defendants) for the actions of their predecessors. As a result, what is relevant here are the actions of Annucci and Effman (and the supervisory defendants) themselves. There is no evidence that either played any role in the hiring of any of the defendants or had occasion to access/review their psychological evaluations. See generally Dawson Decl.

Second, release of the information contained in the psychological evaluation poses a serious threat to the security of the individual defendants and the facilities where they work. The law enforcement privilege prevents "disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re City of New York, 607 F.3d 923, 940–42 (2d Cir. 2010) (citing In re Dep't of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir. 1988). Federal common law, In re Dep't of Investigation, 856 F.2d 481, 484 (2d Cir. 1988), federal statutory law, 5 U.S.C. 552(b)(7), and New York statutory law, NY Pub Officers. L. 87 subd. 2(3), all recognize that information compiled for law enforcement purposes is extremely sensitive and is protected from disclosure if it would cause security concerns, interfere with an agency's ability to investigate, or invade an individual's privacy. Here, the evaluations contain information pertaining to things such as legal history, spouses, children, financial history, and arrest history. See Dawson Decl. ¶ 32. If any of this information were to be released into the public, even inadvertently, it could be used by incarcerated individuals or their accomplices to try to manipulate or harm the defendants. Id.

Third, release of the evaluations has the potential to frustrate the purpose of psychological screening by making it possible for candidates who have yet to undergo DOCCS' psychological testing to obtain guidance or insight into the exam questions being asked and the information or answers that are taken into consideration by psychologists determining whether an applicant is psychologically suitable for the position of Correction Officer. See Dawson Decl. ¶ 30. Possession of such information could facilitate cheating and/or invalidate the testing instrument which could jeopardize safety and security, as well as the significant monetary investment DOCCS has made to create this screening process.

Fourth, release of the evaluations would result in the release of proprietary information maintained by LEPS, including the exam questions and grading scales and criteria. This applies even to the portions of the psychological assessment that DOCCS maintains.

Finally, the information contained in the psychological evaluation is highly confidential and is protected by HIPAA. At the January 18, 2022 conference, plaintiffs objected to this argument by asserting that HIPAA does not extend to DOCCS. See Exh. A at 20. However, plaintiffs have not explained why the individual defendants whose mental health information is being requested are not entitled to HIPAA. Plaintiffs also argue that even if HIPAA applies to the evaluations, the Court can order that it be produced. Id. However, although the Court has the power to do so, does not mean it should. The information at issue is highly sensitive and should not be produced for the reasons set forth above.

For all of the foregoing reasons, defendants respectfully request that the Court grant their motion for a Protective Order and deny plaintiffs' request for a copy of the psychological evaluations of the defendants specified in Document Request Number 45, even in redacted form and under an Attorneys' Eyes Only designation.

Respectfully submitted,

/s/ Neil Shevlin
Neil Shevlin
Assistant Attorney General
Neil.Shevlin@ag.ny.gov

cc: Counsel for plaintiffs (by ECF)

---

Defendants shall not be required to produce redacted copies of the psychological evaluations **at this time**, with the exception of any criminal history information contained therein. Defendants may produce such criminal history information independently or by redacting all other information in the evaluations. The parties shall provide a joint status letter by **March 31, 2022**.

**SO ORDERED.**

_____
Ona T. Wang        3/3/22
U.S.M.J.